FILED
 2005 Sep-12  AM 09:18
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **EARL D. STROTHER,** | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | **CASE NO. CV 04-B-3249-S** |
| | } | |
| **PICCADILLY RESTAURANTS, LLC,** | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Currently before the court is defendant's Motion to Dismiss and/or Stay, and to Compel Arbitration. (Doc. 5.)[1]  Plaintiff, Earl Strother, has sued defendant, Piccadilly Restaurants, LLC ("Piccadilly"), alleging that he was terminated in violation of the Civil Rights Act of 1866 and Title VII of the Civil Rights Act of 1964. (Doc. 1 ¶ 12.)  Defendant argues that this case should be dismissed or stayed, and arbitration compelled, because plaintiff agreed to arbitrate all claims arising out of his employment with Piccadilly. (*Id.* ¶ 1.)  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss is due to be granted and the parties should be compelled to arbitrate.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I.  FACTUAL SUMMARY

Plaintiff had worked for Piccadilly for roughly eight years when, in 2003, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), stating that Piccadilly had discriminated against him because of his race.  (Doc. 1 ¶¶ 6-7.) On September 30, 2003, the matter was resolved.  (*Id.* ¶ 8.)  Plaintiff withdrew his EEOC charge and continued his employment.  (*Id.*)  On March 14, 2004, plaintiff signed a Piccadilly document entitled "Dispute Resolution Program and Mutual Agreement to Mediate/Arbitrate" ("the Agreement").  (Doc. 5, Ex. at 1, 6.)  On May 26, 2004, plaintiff was terminated from his employment with Piccadilly.  (Doc. 1 ¶ 9.)

Plaintiff now brings this action alleging that his termination was "in retaliation for opposing conduct that constituted unlawful discrimination in violation of the 'Civil Rights Act of 1866,' as amended, and Title VII of the 'Civil Rights Act of 1964,' as amended by the 'Civil Rights Act of 1991.'" (*Id.* ¶ 12.)  Defendant argues in response that a valid arbitration agreement precludes plaintiff from bringing a lawsuit based on these facts, whereas plaintiff contends that the Agreement is unenforceable because there was no mutual assent to arbitrate and because a provision regarding attorneys' fees invalidates the entire document.

## II.  DISCUSSION

### A.    The Existence of an Agreement to Arbitrate

Plaintiff argues that the signed Agreement between plaintiff and defendant, upon which defendant relies to establish an agreement to arbitrate, "does not constitute a valid

offer to arbitrate all disputes; therefore, the plaintiff could not have accepted the same." (Doc. 7 at 3.) To support this argument, plaintiff points to several purported ambiguities in the Agreement that "suggest[] that employees have the option of pursuing mediation *or* arbitration." (*Id.* at 4 (emphasis in original).) Plaintiff asserts that these ambiguities render the document unclear on whether all disputes must be resolved by binding arbitration, rather than in court. (*Id.*) If the terms of the offer contained in the document are sufficiently unclear, plaintiff suggests, no valid contract to arbitrate could have been formed. *See Memberworks, Inc. v. Yance*, 899 So. 2d 940, 942 (Ala. 2004) ("The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." (alteration in original) (internal quotation marks omitted)).

The court does not find this argument persuasive based on the facts in this case. The cases plaintiff cites in support of his argument are distinguishable because the arbitration agreements in those cases differed from the Agreement in the present case. For example, in *Strickland v. Brand Scaffold Builders, Inc.*, an unreported ruling relied on by plaintiff, the magistrate judge noted that the pamphlet containing the purported arbitration agreement "begins with an introduction that suggests that the policy guidelines are an optional way to resolve office disputes." *Strickland v. Brand Scaffold Builders, Inc.*, No. 01-1830-L, slip op. at 6 (S.D. Ala. Feb. 5, 2002) (unpublished order denying defendant's motion to compel arbitration). The *Strickland* court also noted that "the policy fails to make clear that the

employee must consent to this 'new program' or that continued employment is premised on consent." *Id.* at 7.  In contrast, the Agreement between plaintiff and defendant, in a section under the heading "Agreement to Arbitrate Between Piccadilly and its Employees," contains the following provision:

> *Piccadilly and Employee mutually consent to the resolution, by final and binding arbitration, of any and all claims or controversies ("claim") that Piccadilly may have against Employee or that Employee may have against Piccadilly or its officers, directors, partners, owners, employees or agents in their capacity as such or otherwise, whether or not arising out of the employment relationship (or its termination), including but not limited to, any claims arising out of or related to this Agreement to Arbitrate (this 'Agreement') or the breach thereof.*
>
> *The claims shall be settled exclusively by binding arbitration in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA"), and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.*
>
> ***PICCADILLY AND EMPLOYEE FULLY UNDERSTAND THAT, ABSENT THIS AGREEMENT, LEGAL CLAIMS BETWEEN THEM COULD BE RESOLVED THROUGH THE COURTS AND A JURY, BUT THE PARTIES EXPRESSLY AGREE TO FOREGO THE TRADITIONAL LITIGATION SYSTEM IN FAVOR OF BINDING ARBITRATION.***

(Doc. 5, Ex. A at 3.)  The court is of the opinion that the language of this clause would put any employee signing the Agreement on notice that he or she was agreeing to submit any claims against Piccadilly to binding arbitration.  Words and phrases such as "any and all claims," "exclusively," and "expressly agree to forego" are not ambiguous and signify that this clause is not an optional one.  Even if *Strickland* were binding authority on this court,

4

which it is not, the language of the Agreement in this case is sufficiently dissimilar to the policy at issue in that case to render the cases easily distinguishable.[2]  The court finds the Agreement sufficient to bind the parties to arbitration in disputes regarding plaintiff's employment and termination therefrom.

B.    **The Availability of Attorneys' Fees**

The second argument advanced by plaintiff is that the Agreement's "provision on arbitration fees and costs is unenforceable and invalidates the entire document.  Specifically, the . . . Agreement implies that employees are to pay their own attorneys' fees and costs, regardless of the outcome of arbitration."  (Doc. 7 at 4-5.)  Because Title VII allows a prevailing plaintiff to collect his attorneys' fees from the defendant(s), plaintiff argues that "the clause in the . . . Agreement requiring the plaintiff to pay his own attorneys' fees and costs, regardless of the outcome, is unenforceable."  (*Id.* at 5.)

The Agreement states that "[t]he parties shall be responsible for their own attorneys' fees, witness fees, transcripts, copy costs, postponement/cancellation fees, and discovery costs.  (Doc. 5, Ex. A at 5.)  The Agreement also states that "[a]rbitrators can award the same damages or remedies as a court of law."  (*Id.* at 3.)  This clause suggests that attorneys' fees

---

[2]    The language of the Agreement here is akin to the language referenced by the *Strickland* court of the agreements in *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054 (11th Cir. 1998).  The court in *Strickland* noted that the arbitration agreement in *Paladino* "would put an employee on notice that they [sic] were consenting to an agreement to arbitrate." *Strickland*, slip op. at 9.  The arbitration notice in *Strickland* was held to be unlike the notice in *Paladino*, and therefore unenforceable.  Because the Agreement in the present case is unlike that of *Strickland* and like that of *Paladino*, the Agreement is valid and enforceable, despite the fact that the *Paladino* court went on to hold the agreement there unenforceable on other grounds that will be discussed *infra*.

would be available if plaintiff were to arbitrate his claim, because an arbitrator could award all damages or remedies available to a Title VII plaintiff, and in particular attorneys' fees. However, when read with the previously cited provision stating that each party will bear its own attorneys' fees, the court finds that the Agreement is ambiguous in regards to the payment of attorneys' fees. The court must now determine the effect of this ambiguity in regards to the remainder of the Agreement.

C.      Severability of the Attorneys' Fees Provision

Plaintiff relies upon *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998), for the proposition that "[w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute, . . . the arbitration clause is not enforceable." *Id.* (citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1468 (D.C. Cir. 1997)). The Eleventh Circuit discussed the *Paladino* decision in *Anders v. Hometown Mortgage Servs., Inc.*, 346 F.3d 1024, 1030 (11th Cir. 2003):

> That decision involved an employer's appeal of a district court's denial of its motion to compel arbitration in an employment discrimination action. The agreement in that case referred to arbitration all employment disputes, but specified that "[t]he arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages." [*Paladino*, 346 F.3d] at 1060. Because Title VII damages are not contract damages, we concluded that the arbitration clause denied the employee "the possibility of meaningful relief in an arbitration proceeding." *Id.* at 1062. The arbitration clause was invalid, we said, because "the arbitrability of [statutory] claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies." *Id.* (citing *Gilmer* [*v. Interstate/Johnson Lane Corp.*], 500 U.S. [20], 28 [(1991)]). The arbitration clause in *Paladino* did not do that, so we

> pronounced it invalid. With no valid agreement to arbitrate, the parties were left to fight it out in court.

*Anders*, 346 F.3d at 1030 (first and third alterations in original). Plaintiff argues that the holding in *Paladino* requires this court to find that the Agreement is unenforceable in its entirety because of the attorneys' fees provision.

However, the Agreement contains a severability clause, which states:

> In the event that any provision of this Agreement is determined by the Arbitrator or by a court of competent jurisdiction to be illegal, invalid or unenforceable to any extent, such provision shall be enforced to the extent permissible under the law and all remaining provisions of this Agreement shall remain in full force and effect.

(Doc. 5, Ex. A at 5.) The agreement at issue in *Anders* contained a severability clause that was virtually identical to the one in the present Agreement. 346 F.3d at 1032 n.7. The *Anders* court noted that "Alabama law favors severability, and it gives full force and effect to severability clauses." *Id.* at 1032. The court's decision, in which it declined to rule on the enforceability of the attorneys' fees provision while compelling the parties to arbitrate, illustrates that the *Anders* case is more applicable to the facts of the present case than is *Paladino*:

> The decision in *Paladino,* in which the invalid portion of the arbitration agreement was not severed, is distinguishable. 134 F.3d at 1062. As we have mentioned, the opinion in *Paladino* says nothing about a severability clause and there may not have been one. Also, the agreement in *Paladino*, a Florida case, was not to be construed and applied in light of Alabama law, *id.* at 1061 n.1, which favors severability. Whether we correctly applied the applicable state law in *Paladino,* we have an obligation to apply Alabama law correctly in this

case.

> The severability determination decides the arbitration question. Because any invalid provisions are severable, the underlying claims are to be arbitrated regardless of the validity of the remedial restrictions. With or without those provisions, the case goes to arbitration. Whether the agreement is valid as written or suffers invalid provisions that must be removed under the forgiving eye of the severance clause, there is a valid agreement to arbitrate in place.
>
> Since the case is going to arbitration, an arbitrator and not a court should decide the validity of the remedial restriction provisions, because "[a] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." *Musnick v. King Motor Co. of Ft. Lauderdale,* 325 F.3d 1255, 1261 (11th Cir. 2003) (quotation marks and citation omitted). Our decision in this respect aligns us with the majority of circuits that have answered this question. *See, e.g.*, *Bob Schultz Motors, Inc. v. Kawasaki Motors Corp.,* 334 F.3d 721, 726 (8th Cir. 2003); *MCI Telecomms. Corp. v. Matrix Comms. Corp.,* 135 F.3d 27, 33 n.12 (1st Cir. 1998); *Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 232 (3d Cir. 1997).

346 F.3d at 1032-33. In accordance with the Eleventh Circuit's decision in *Anders*, the court finds that this matter is subject to the arbitration agreement. The arbitrator is to decide the "validity of the remedial restriction" and whether to strike the attorneys' fees provision.

**D.    Dismissal of the Complaint**

Plaintiff argues that defendant has not explained why this case should be dismissed. (Doc. 7 at 2.) However, courts regularly dismiss claims based upon an enforceable arbitration agreement. *See, e.g.*, *Hill v. Rent-a-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (recounting district court's resolution of case by "dismiss[ing] [plaintiff's] case without prejudice to reinstate[] if arbitration was not completed successfully"); *Anders*, 346 F.3d at

8

1026 (affirming decision to compel arbitration and dismiss the plaintiff's claims); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." (emphasis in original)); *Chapman v. Lehman Bros., Inc.*, 279 F. Supp. 2d 1286, 1290 (S.D. Fla. 2003) ("ORDERED and ADJUDGED that [defendant's] Motion to Dismiss . . . is GRANTED because Plaintiffs are bound to arbitrate the claims presented. (citing *Thompson v. Nienaber*, 239 F. Supp. 2d 478, 482-84 (D.N.J. 2002))). The case is therefore due to be dismissed without prejudice.

### III.  CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion to Dismiss is due to be granted and the parties should be compelled to arbitrate. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 12th day of September, 2005.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE